UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ROSA MIRIAM PALMER SPELLMAN,

            Plaintiff,

                                                Case No. 18-cv-1856-pp

  v.

DISABILITY RIGHTS WISCONSIN, and
NATIONAL DISABILITY RIGHTS NETWORK,

            Defendants.

---

**ORDER ADOPTING MAGISTRATE JUDGE JOSEPH'S REPORT AND RECOMMENDATION (DKT. NO. 5) AND DISMISSING CASE WITHOUT PREJUDICE FOR FAILURE TO STATE A CLAIM**

---

      On November 26, 2018, the plaintiff filed a complaint here in federal court. Dkt. No. 1. The complaint indicates that the plaintiff is "a totally disabled person for the purposes of filing this Complaint," and indicates that the plaintiff's guardian, Thomas Spellman, filed the complaint on her behalf. Id. at pp. 1, 3. The plaintiff has sued two defendants—Disability Rights Wisconsin and the National Disability Rights Network. Id. at pp. 1-2. The complaint indicates that the plaintiff is suing these two defendants for "a violation of federal law under 28 U.S.C. ss 1331." Id. at p. 2.

      The complaint states that the plaintiff is a totally disabled person living in Delavan, Wisconsin. It does not provide the plaintiff's age. It does not say whether the plaintiff has a job (and if she does, where she works, and what kind of work she does). One of the attachments to the complaint is a document titled "Gifts of the Sheltered Workshop." Dkt. No. 1-2. This document appears to have been prepared by the plaintiff's guardian and father, Thomas Spellman.

1

Id. at 5. It states that the plaintiff has "been working at VIP Service, a Sheltered Workshop in Elkhorn, Wisconsin, for fifteen years." Id. at 1. Along with the complaint, the plaintiff filed a request to proceed in this case without prepaying the filing fee. Dkt. No. 2. In that request, she says that she works for VIP Services in Elkhorn, Wisconsin, that she receives Social Security benefits and that she lives with her parents. Id. at 2. The court agrees with Magistrate Judge Joseph that the plaintiff lacks the means to pay the filing fee in this case.

The complaint alleges that the two defendants have discriminated against the plaintiff "by conspiring to deny [the plaintiff her] RIGHT to WORK for a 'special minimum wage' as allowed by LAW by a number of actions." Id. at 1. The complaint refers to an attachment for an explanation of how the defendants discriminated. Id. The complaint asserts that the discrimination started when the Board of the National Disability Rights Network published a document in 2011. Id. at 1-2. The plaintiff asserts that this document has not been withdrawn. Id. at 2. She also states that Disability Rights Wisconsin "FALSELY, in their 'Principles for Employment of People with Disabilities,' to include [the plaintiff's] RIGHT to WORK for the "special minimum wage" as allowed by LAW." Id. She refers the court to another attachment. Id.

On December 3, 2018, Judge Joseph issued a recommendation to this court that it dismiss the plaintiff's complaint for failure to state a claim. Dkt. No. 5. Judge Joseph noted that the defendants are nonprofit organizations established to provide legal support, advocacy, referral and education to protect the rights of disabled people and their families. Id. at 3. In January 2011, the board of defendant National Disability Rights Network published a document (attached to the complaint as dkt. no. 1-3) titled, "Segregated and Exploited: A

Call to Action! The Failure of the Disability Service System to Provide Quality Work." Id. Judge Joseph noted that the document appeared to criticize something called "sheltered workshops," asserting that they segregated and exploited disabled people and paid them "sub-minimum wage." Id. Disability Rights Wisconsin, Judge Joseph noted, published a document titled "Principles for employment of People with Disabilities" that said, among other things, that disabled people should receive minimum wage or higher, and the same wage as employees who don't have disabilities. Id. at 3-4.

Judge Joseph explained that in the "Gifts of the Sheltered Workshop" document that the plaintiff's parents attached to the complaint, they indicated that federal law—the Fair Labor Standards Act—provided for persons with disabilities to be paid a "special minimum wage." Id. at 4, citing Dkt. No. 1-2 at 1-2 and 29 U.S.C. §214(c). The plaintiff's parents explained that the special minimum wage was reasonable for disabled workers, because they weren't as productive as abled workers, and that it allowed disabled people to have access to work they might not otherwise have. The plaintiff's parents also argued that the "sheltered workshop" employment model was valuable—it provided disabled individuals a variety of work experiences, allowed them to work at their own pace, offered stability and predictability, and provided many other benefits. Id.

Judge Joseph concluded that the plaintiff and her father appear to be very grateful for the existence of sheltered workshops like VIP, Inc. It sounds like the plaintiff feels that if it weren't for the special minimum wage, and if it wasn't for sheltered workshops, she might not be able to work at all, much less have spent the last fifteen years working productively and happily at VIP, Inc. Judge Joseph understood that the plaintiff and her parents are upset that the

3

defendants—groups that say they advocate for disabled people and exist to help disabled people—have published policy recommendations that criticize and even propose to do away with sheltered workshops and the special minimum wage that have been so valuable and helpful to the plaintiff. Id. at 5. Even though Judge Joseph understood the feelings of the plaintiff and her parents, however, she explained that First Amendment to the Constitution guarantees the defendants the right to express their opinions about sheltered workshops and the special minimum wage. Id. She explained if conscientious citizens like the plaintiff and her parents do not want a particular policy to become law, they should present their arguments to their elected representatives, not to a court. Id. Because Judge Joseph found that the plaintiff had alleged only that the defendants expressed opinions with which she does not agree—something that is not only legal, but protected by the First Amendment—she recommended that this court dismiss the plaintiff's case for failure to state a claim.

The plaintiff has objected to Judge Joseph's recommendation. Dkt. No. 7. The plaintiff says that she is defending her right to work and to be paid the special minimum wage. Id. at 1. She says that the defendants have discriminated against her by conspiring to deny her her right to work for the special minimum wage. Id. She says that in advocating against sheltered workshops and calling the special minimum wage sub-minimum, the defendants are "actively taking actions against" her interest. Id. at 2.

The plaintiff asserts that in saying that she (as a disabled person) is exploited, or that the sheltered work model (which she very much supports) is broken, or that the special minimum wage for disabled workers is "sub-minimum," or that sheltered work models "segregate" disabled people from

4

abled people, the defendants are lying about her. Id. She says that lying about someone equals discrimination, and that by lying about her and other disabled people, the defendants are discriminating against those disabled people—even though their stated purpose is to protect the interests of disabled people. Id. at 2. The plaintiff insists that it is discrimination for a disability rights advocacy group to take a position different from the position that she—a disabled person—holds. Id. She asks whether the defendants can "pick and choose who they will PROTECT and which RIGHTS of mine and the others they will defend?" Id. She asks, "What is the difference between an 'opinion' protectable by the First Amendment of the U.S. Constitution and a LIE?" Id.

The plaintiff asserts that it is a lie for the defendants to say that she is segregated, because she is not and she can't be. Id. at 2-3. She says that the defendants lie when they say she is exploited, because she is not. Id. at 3. She says that the defendants lie when they say that she is paid a "sub-minimum wage," a term she says is fabricated. Id. To sum up her argument, the plaintiff says,

> The simple question is can NDRN and DRW LIE about me and the others? YES or NO. If no then the final answer is easy, they have lied about me and must stop lying about me. If YES then who represents me and the others when the NRDN and DRW represent the interest that are in direct conflict with my and the other's interest?

Id.

Judge Joseph is correct that, despite her frustration and her passion, the plaintiff has not stated a legal claim for which a federal court can grant relief. The plaintiff stated in her complaint that she was suing "for a violation of federal law under 28 U.S.C. ss 1331." Dkt. No. 1 at 2. Section 1331 gives federal courts the authority to exercise jurisdiction over lawsuits that arise under the United States Constitution, or federal laws, or United States treaties.

5

For this federal court to grant the plaintiff relief, she must allege facts that show that the defendants did something that violated a federal law or a provision of the Constitution.

There *is* a federal law that prohibits discrimination against disabled people. It is called the Americans with Disabilities Act, or the "ADA." The ADA, located at 42 U.S.C. §12112, *et seq.*, says that "[n]o *covered entity* shall *discriminate* against a qualified individual on the basis of a disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a).

The ADA defines what it means by "discriminate:"

**(b) Construction**

As used in subsection (a) of this section, the term "discriminate against a qualified individual on the basis of disability" includes--

**(1)** limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee;

**(2)** participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs);

**(3)** utilizing standards, criteria, or methods of administration--

**(A)** that have the effect of discrimination on the basis of disability; or

**(B)** that perpetuate the discrimination of others who are subject to common administrative control;

**(4)** excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association;

**(5)(A)** not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or

**(B)** denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant;

**(6)** using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity; and

**(7)** failing to select and administer tests concerning employment in the most effective manner to ensure that, when such test is administered to a job applicant or employee who has a disability that impairs sensory, manual, or speaking skills, such test results accurately reflect the skills, aptitude, or whatever other factor of such applicant or employee that such test purports to measure, rather than reflecting the impaired sensory, manual, or speaking skills of such employee or applicant (except where such skills are the factors that the test purports to measure).

42 U.S.C. §12112(b). The ADA does not include "lying" in its definition of discrimination. Even if the court agreed with the plaintiff that the defendants are "lying" about her—and the court does not agree—lying about someone does not constitute "discrimination" under the ADA.

Further, the ADA does not apply to the plaintiff's claims against these defendants, because neither of these defendants are her employer. The ADA

7

prohibits only a "covered entity" from discriminating against a disabled person. What is a "covered entity?" In other words, who does the ADA prohibit from discriminating? "[A]n employer, employment agency, labor organization or joint labor-management committee." 42 U.S.C. §12112(2). The ADA prohibits *employers and labor unions* from discriminating against their employees based on disability. Neither of the defendants is the plaintiff's employer. The ADA does not apply to her claims against the defendants, even if what she claims constituted "discrimination" as defined by the ADA.

If the ADA does not provide relief from the plaintiff's claims, is there any other federal law that might apply? The court does not know of any law that prohibits a private, non-profit advocacy group from taking a position different from a member of the constituency for whom that group advocates. Every person is unique. Even if all disabled people share the characteristic of being disabled, each one of them is a unique individual with different opinions and ideas about all sorts of topics.[1] Just as the plaintiff and her parents strongly believe in and support sheltered workshops, there are probably many disabled people and their parents who do not support sheltered workshops. Just as the plaintiff and her parents believe that the special minimum wage makes it possible for disabled people to obtain work that otherwise they might not be able to obtain, there probably are many disabled people who feel that the special minimum wage pays them less than what their work is worth. Any

---

[1] The plaintiff's father makes this exact point in some observations he shared with the court regarding his view of the disabled community. Dkt. No. 8. He noted that even though there is a single group of people who might be described as "disabled," "there are great differences" between people who are physically disabled and those who are cognitively disabled and those who have both kinds of disabilities. Id. at 2. There are millions of other differences—in experience, opinion, beliefs, backgrounds—among all of the people who call themselves disabled.

organization that purports to speak for a large group of people will sometimes take positions that diverge from the preferences of some members of that group. If that were illegal, it would be impossible for organizations to advocate on behalf of *groups*—each individual would be forced to advocate for himself or herself.

Nor is there any provision of the Constitution that prohibits a private, non-profit advocacy group from taking a position different from a member of the constituency for whom that group advocates. The Constitution, through 42 U.S.C. §1983, prohibits *states* from discriminating against people based on their disabilities. But the defendants are not state actors; they are private organizations.

So there is no federal law or provision of the U.S. Constitution that prohibits the defendants from advocating against sheltered workshops, or advocating against the special minimum wage, or stating their opinion that workshops segregate disabled workers from abled workers or that the special minimum wage exploits disabled people. There *is*, however, a provision of the Constitution that protects the defendants' right to state their opinions, and to advocate for or against whatever positions they believe best support their members. As Judge Joseph explained, the First Amendment's guarantee of free speech gives the defendants the right to have opinions—even if the plaintiff, as a member of the group the defendants are supposed to protect, doesn't agree with those opinions. The First Amendment guarantees the defendants the right to propose, and argue for, legislation, even if one of the people they purport to represent does not like or want that legislation. There is a famous expression by the English writer Evelyn Beatrice Hall that many people use to describe the protections guaranteed by the First Amendment. Hall wrote, "I disapprove of

what you say, but I will defend to the death your right to say it." The First Amendment prohibits the government from restricting "expression because of its message, its ideas, its subject matter, or its content." Reed v. Town of Gilbert, Ariz., 135 S. Ct. 2218, 2226 (2015) (quoting Police Dep't of Chi. v. Mosley, 408 U.S. 92, 95 (1972)). If there *was* a law prohibiting the defendants from expressing their opinions or advocating for legislative positions, that law likely would be an unconstitutional violation of the First Amendment.

The court noted above that it does not agree with the plaintiff that the defendants are lying about her. The "Segregated & Exploited" document published by the National Disability Rights Network does not mention the plaintiff by name. Dkt. No. 1-3. It does not mention any disabled person by name. The cover letter from the executive director, Curtis L. Decker, does not say that *all* disabled people are segregated from traditional work or kept out of site. It does not say that *all* disabled people make a fraction of the minimum wage. The executive director talks about how many people with disabilities have a dream of leaving job training programs, id. at 3—he does not appear to be talking about the plaintiff, because it seems that she does not want to leave her sheltered workshop job.

The same is true for the statement in the Disability Rights Wisconsin Principles for Employment of People with Disabilities that "[p]eople with disabilities have the right to be paid for employment at minimum wage or higher and at the same market wage as employees without disabilities." Dkt. No. 1-1 at 1. This is not a lie about the plaintiff. It is a statement of the organization's belief that everyone—disabled or not—has a right to be paid at minimum wage or higher. The fact that the defendants state the opinions that sheltered workshops don't work for many disabled people, and that the special

minimum wage is not fair to many disabled people, does not mean that they are lying about *the plaintiff*. The court suspects they do not even know the plaintiff.

In his observations that he shared with the court, the plaintiff's father cited Gertz v. Robert Welch, Inc., 418 U.S. 323, 340 (1974) for the proposition that the First Amendment does not protect "false statements of fact." Dkt. No. 8 at 3. The court believes that the first three sentences of that decision are more relevant to this case. The Supreme Court stated, "We begin with common ground. Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." Gertz, 418 U.S. at 339-340. The defendants' statements that sheltered workshops and the special minimum wage are bad for disabled people are statements of their opinions—just like the plaintiff's statement that these things are good for disabled people is a statement of her opinions.

Finally, the plaintiff has asked: if the law does not prohibit the defendants from advocating against sheltered workshops and the special minimum wage, who represents the disabled people who support those things? Judge Joseph gave the answer to that question—elected officials. It is the legislature that decides whether to pass laws, and what laws to pass. Organizations like the defendants may advocate for legislation, but only elected legislators can pass laws that would do away with sheltered workshops or the special minimum wage. The plaintiff and her parents can contact their elected representatives and share with them their concerns and their experiences. They can urge other disabled people and their families who feel the same way the plaintiff does to contact their elected representatives. They can even form

11

their own advocacy group, to advocate for sheltered workshops and the special minimum wage. The plaintiff and her family have the right to advocate for their positions, just like the defendants have the right to advocate for theirs.

While the court regrets that the plaintiff feels that the defendants don't represent her, and that they are working against her when they purport to be working for her, the court cannot allow her to proceed with this case, because the complaint does not state a violation of federal law or the federal Constitution for which this court can grant relief.

The court **ADOPTS** Judge Joseph's report and recommendation. Dkt. No. 5. The court **ORDERS** that this case is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief can be granted.

Dated in Milwaukee, Wisconsin this 22nd day of February, 2019.

          **BY THE COURT:**

          _____
          **HON. PAMELA PEPPER**
          **United States District Judge**